FRANK E. HALL *vs.* ELIZA M. EATON & others.

Worcester. Oct. 3, 4, 1884. — May 8, 1885. COLBURN, J., absent.

A deed of a lot of land in a city described it as bounded beginning at the intersection of D. Street and W. Street, thence running northerly by W. Street one hundred and thirty-four feet to land of the grantor, thence running westerly by land of the grantor, thence running southerly by land of the grantor " at right angles to D. Street one hundred and twenty-five feet to D. Street, thence running easterly by D. Street sixty-one feet more or less to the first-mentioned bound, containing 7770 feet more or less." The lines of D. Street and W. Street were fixed bounds. *Held,* that the third line ran at a right angle to D. Street, although this would make the fourth line on D. Street eighty and fifty-two one-hundredths feet long, and the area 9101 feet. *Held, also,* that the following evidence was inadmissible to control the construction given to the deed : Before the deed was executed, the grantor made a plan of a tract of land, of which the lot in question formed a part, on which the line on D. Street was represented to be sixty feet and six inches in length, and the third line was not at a right angle to D. Street. It did not appear that this plan had been seen by the grantee. The grantor subsequently conveyed the adjoining lot, and the deed described the boundaries on the theory that the lot previously conveyed was as shown on said plan. Seven years after the first deed was given, the owner of the second lot erected, with the consent of the grantee of the first lot, a division fence between the two lots, on the line shown on said plan, and this fence remained in position several years.

WRIT OF ENTRY to recover a lot of land in the city of Worcester. Plea, *nul disseisin.* Trial in the Superior Court, without a jury, before *Blodgett,* J., who allowed a bill of exceptions, in substance as follows :

The land in dispute was a triangular tract on the northerly side of Dix Street, marked on a plan used at the trial, a copy of which is printed in the margin,* as " Demanded Premises." It

appeared that all the land lying next northerly of Dix Street and between Wachusett Street on the east and Goulding Street on the west was formerly owned by Henry Goulding, and was divided into lots and sold by his executors. The tenants' lot was at the corner of Dix Street and Wachusett Street, and the demandant's lot was part of the lot next westerly, and the question was as to the westerly boundary of the tenants' lot and the easterly boundary of the demandant's lot, under the following deeds:

On February 20, 1869, Goulding's executors conveyed the corner lot to Blackmer and Kelley, (under whom the tenants derive their title,) by the following description: "A certain lot of land situated in the city of Worcester, on the westerly side of Wachusett Street and northerly side of Dix Street, bounded and described as follows, to wit: beginning at the southeasterly corner of the lot conveyed, and at the intersection of said streets; thence running northerly by Wachusett Street one hundred and thirty-four feet, to land of the heirs of Henry Goulding; thence running westerly by land of the heirs of said Goulding, sixty feet; thence running southerly by land of said heirs at right angles to said Dix Street one hundred and twenty-five feet to Dix Street; thence running easterly by Dix Street sixty-one feet more or less to the first-mentioned bound, containing 7770 feet more or less."

On October 8, 1869, said executors conveyed the residue of the land between the tenants' lot and Goulding Street to one King, by a deed which contained the following description: "Lot of land on the northerly side of Dix Street, bounded as follows: beginning at the southeasterly corner of the lot at a corner of land of Kelley and Blackmer and running westerly on Dix Street one hundred and eighty feet to a new street about to be made; thence turning and running northerly on said new street one hundred and twelve and a half feet, to land belonging to the estate of the late Henry Goulding; thence turning and running easterly on said Goulding estate one hundred and eighty feet, to land of Kelley and Blackmer; thence turning and running southerly on land of said Kelley and Blackmer one hundred and twenty-five feet, to the place of beginning on said Dix Street."

It was agreed that the new street referred to was Goulding Street, and the corner of Goulding Street and Dix Street was a known and fixed bound.

On May 8, 1871, King conveyed to the demandant a part of said lot, forty-five feet wide on Dix Street, bounded as follows: " beginning at the southeasterly corner thereof at corner of land of Kelley and Blackmer, and at a point one hundred and eighty feet distant from the easterly line of Goulding Street, thence northerly on land of Kelley and Blackmer one hundred and twenty-five feet, to land of the estate of Henry Goulding; thence westerly on said land of Goulding forty-five feet; thence southerly and parallel with the first-described line one hundred and twenty-five feet more or less, to said Dix Street; thence easterly on Dix Street forty-five feet, to the place of beginning."

The corner of Dix Street and Wachusett Street was a known and fixed bound, and the northerly line of Dix Street was a known and fixed line.

If the third line described in the deed of the executors to Blackmer and Kelley is drawn at right angles to Dix Street, it strikes a point on Dix Street eighty feet and fifty-two one-hundredths of a foot from Wachusett Street, and one hundred and sixty-one feet and ninety-four one-hundredths of a foot from Goulding Street. In such case, the tenants' line on Dix Street is eighty feet and fifty-two one-hundredths of a foot in length, and is shown by the westerly dotted line, and their lot contains 9101 square feet.

If the third line described in said deed to Blackmer and Kelley is drawn so as to strike Dix Street one hundred and eighty feet easterly from Goulding Street, the tenants' line on Dix Street is sixty feet and a half in length, and their lot contains exactly 7770 square feet.

The demandant offered evidence tending to show that, before the several lots were sold by the executors of Henry Goulding, they prepared a plan of them, which was produced at the trial; and it was testified by one of the executors, that the lots were sold by said plan, but there were no monuments at the corners of the lots when the deeds were given, and there was no evidence that Blackmer and Kelley saw the plan before they took their deed. Said plan showed the tenants' lot to have a line

of only sixty feet and a half on Dix Street, and showed that the westerly line did not make a right angle with Dix Street.

The demandant also offered evidence tending to show that, in the year 1876, he erected a fence between his said lot and the tenants' lot, (Kelley, who had bought Blackmer's interest, then being the owner of the tenants' lot,) and by Kelley's consent it was placed on the line as claimed by the demandant, and remained there several years, and until removed by the tenants a short time before this suit was brought.

The demandant asked the judge to rule that it was a question of fact, on all the evidence, whether the tenants' westerly line was to be drawn at right angles to Dix Street, and asked a finding in fact that it was to be drawn at an angle to said Dix Street, so as to strike said street sixty and a half feet from Wachusett Street. The judge ruled, as matter of law, that the said line was to be drawn at a right angle to Dix Street, without regard to the evidence outside of the deeds; and found for the tenants. The demandant alleged exceptions.

*F. P. Goulding*, for the demandant.

*H. E. Hill*, for the tenants.

W. ALLEN, J. The courses of the lines on Wachusett Street and Dix Street are fixed on the land, and fix the angle contained by them. There is nothing on the land to fix the course of the second or of the third line, for it does not appear that the line of the land of the heirs of Henry Goulding mentioned is fixed. The description in the deed gives the length of the first, second, and third lines, which there is nothing to control, and the angle contained by the third and fourth lines. There is no difficulty in locating this description upon the land, and it makes the length of the fourth line eighty feet and fifty-two one-hundredths of a foot, and the contents of the lot 9101 square feet. The description in the deed gives the length of the fourth line as "sixty-one feet more or less," and the contents of the lot as "7770 feet more or less." This discrepancy of one third in the length of the front line of the lot, and one fifth in its contents, could not have been intended, although the length and dimensions are only approximately given, and it is obvious that there is a mistake, either in the angle given, or in the length of the fourth line.

We do not regard the statement of the quantity of the land as very material. It is the computation of the contents of the figure described in the deed, but which cannot be produced on the land. The fact that to give exactly the quantity of land mentioned when the other particulars of the description are applied to the land, the third line must intersect the fourth at an obtuse angle, and the fourth line must be sixty feet and a half in length, goes to show, what is otherwise sufficiently apparent, that no such discrepancy in the length was intended. There was a mistake either in the angle given or in the length of the fourth line; they cannot both be applied to the land, though either of them may be, and the question is which must be rejected.

The question to be determined is the intention shown in the language of the deed, in the light of the situation of the land and the circumstances of the transaction, and sometimes with the aid of declarations and conduct of the parties in relation to the subject-matter. The rule that monuments, in a description in a deed, control courses and distances, is founded on the consideration that that construction is more likely to express the intention of the parties. The intention to run a line to a fixed object is more obvious, and the parties are less likely to be mistaken in regard to it than in running a given distance or by a given course. But, where the circumstances show that the controlling intention was otherwise, the rule is not applied. *Davis* v. *Rainsford*, 17 Mass. 207. *Parks* v. *Loomis*, 6 Gray, 467. *Chapman* v. *Murdock*, 9 Gray, 156. So far as the question is as to the relative effect to be given to a course and a distance, neither has in itself any advantage over the other as showing a governing intent. Whether the one in a given case shall outweigh the other, as showing the intention of the parties, must depend upon the circumstances existing at the time.

The angle formed by Dix Street and Wachusett Street is an acute angle; the lot was a corner lot, the front on Dix Street. In laying it out, it would be natural either to have the third line in the description parallel to Wachusett Street, or at a right angle with Dix Street. The latter is for the advantage of the purchasers. The deed shows that the parties had that, and not the other, in mind. Not only is the third line not said to be

parallel with Wachusett Street, but it appears that it was not intended to be. The parties understood that the angle at the corner of the streets was an acute angle, and that making the other angle on Dix Street a right angle would require the line on that street to be longer than the rear line, and they said that the angle should be a right angle, and therefore that the line should be longer. It was not merely giving a course to the third line, but it was expressly fixing the shape of the lot. The length of the fourth line was left indefinite, and to be determined by the angle which was fixed. It is true that the given angle requires a longer line than was supposed; but the angle and the shape of the lot, and not the length of the line, appear to have been the controlling considerations. See *Noble* v. *Googins*, 99 Mass. 231.

It is contended by the plaintiff, that it is a case of latent ambiguity, which may be explained by parol evidence. If the difference were between a given course of the third line and measurement of the fourth, it might present such a case, but neither is given. The course of the third line was not run, but it was to intersect Dix Street at a right angle; the fourth line was not measured, but its length was estimated, and apparently estimated as the distance between the point where the third line must meet Dix Street to form a right angle with it and the first corner. A mistake was made in the estimate of the distance. It would seem that the angle was so material a particular in the description of the lot, that the expressed intention in regard to it could not be made doubtful by a mistake in the estimate of the length of the fourth line, which was determined by it; but it is not necessary to decide this. As the case stood at the trial, and upon the evidence offered, the court properly ruled that, as matter of law, the third line was to be at a right angle with Dix Street, without regard to the evidence outside the deed.

The plaintiff relied upon evidence that the executors of Goulding, before the lot was sold, made a plan of this and other lots, by which it appeared that the fourth line was sixty feet and a half in length, and that the angle formed by the third line and Dix Street was an obtuse angle. This plan is not referred to in the deed, and was not seen by the purchasers. The only

effect of this evidence would be to show that the grantors knew that the lot described in the deed did not correspond with the one on the plan, and did not inform the grantees.

Eight months after the conveyance to Blackmer and Kelley, the executors conveyed to one King the adjoining lot on Dix Street, extending westerly to a way to be laid out, called Goulding Street, bounding easterly on the land of Blackmer and Kelley and the line on Dix Street, and the rear lines being each one hundred and eighty feet in length. This evidence may tend to show that the executors intended that the third line of the Blackmer and Kelley lot should be parallel with Goulding Street, but such intention was not known to Blackmer and Kelley, and was not expressed or indicated in the deed to them. The demandant also relied upon evidence that King afterwards conveyed to the demandant a lot adjoining Blackmer and Kelley, described as beginning at a corner of their land on Dix Street one hundred and eighty feet from Goulding Street, and that several years after, and seven years after the conveyance to Blackmer and Kelley, and after Kelley had acquired Blackmer's interest, the demandant put up a fence between his lot and Kelley's, and, with Kelley's consent, put it on the line now claimed by the demandant, where it remained for several years.

We do not see that any of this evidence is competent to control the construction indicated by the deed itself. It is not sufficient to show a practical construction of the deed by the parties to it, nor an admission by the tenants' grantor which can bind the tenants, nor a mutual agreement as to the boundary, and occupation accordingly. See *Liverpool Wharf* v. *Prescott*, 7 Allen, 494; *Miles* v. *Barrows*, 122 Mass. 579; *Lovejoy* v. *Lovett*, 124 Mass. 270. Whether evidence of the construction of the deed by the acts of the parties by locating the third line on the land, or fixing the point of its intersection with Dix Street by a monument or otherwise, would present a question for the jury, we need not consider, because the evidence offered was not sufficient to show such acts, and the question presented was one of law upon the construction of the deed.

A majority of the court are of opinion that the ruling excepted to was correct. *Exceptions overruled.*