JOHN HOOTEN *vs.* MARGARET COMERFORD.

Bristol.    October 31, 1890. — January 7, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Deed — Boundary — Extrinsic Evidence.*

If the owner of land conveys a lot out of the same, bounding it easterly and westerly by his remaining land, with nothing in the deed to fix either line, oral evidence is admissible on the issue of the position of the east line, that the grantor, upon delivering the deed, pointed out to the grantee four stakes, one in each corner, and said that the lot was contained between the stakes, and that by an arrangement between them the lot was enclosed by a fence the following season, each building one half thereof; and, in the absence of mistake or fraud, the grantor cannot defeat the grantee's title by a later deed to another, the measurements in which encroach upon the grantee's land as thus enclosed.

WRIT OF ENTRY to recover a parcel of land in Fall River. Trial in the Superior Court, before *Hammond*, J., who allowed a bill of exceptions, which, so far as material to the point decided, was as follows.

The demandant and the tenant were the owners of adjoining lots of land on Snell Street, in Fall River, and the boundary line between these lots, which formed the easterly line of the tenant's land, was in dispute.    In 1868, Augustus Chace, the owner of a large tract of unoccupied land in that city, conveyed a lot out of the same to the tenant by a deed, which contained the following description, without more: " bounded northerly by a contemplated street called Snell Street, easterly by land of the grantor, southerly by land of Israel Buffington, and westerly

by land of the said Augustus Chace, the grantor, and contains forty-one $\frac{58}{100}$ rods of land more or less, and is a part of the southerly portion of 'Job Snell Farm,' so called."

The tenant was permitted to testify, against the demandant's objection, that Chace delivered the deed to her on the land, and pointed out to her four stakes, one on each corner, three or four inches in diameter and about a foot out of the ground, and told her that the land between these stakes was the land he conveyed to her, and said he had directed the surveyor to give her good measure; that by an arrangement between her and Chace the land was enclosed by fences the following season; and that she built the portion of the fence extending back half-way from Snell Street, and that men in the employ of Chace built the other half, extending back to the southerly line.

There was also evidence of a survey of the lot within the bounds as pointed out by Chace and marked by the stakes, showing that the lot so enclosed contained forty-two and a half rods of land. In 1872, Chace conveyed the lot adjoining the tenant's on the east to one under whom the demandant claims through mesne conveyances, by a deed in which the measurements as laid down therein encroached beyond the boundary line between the two lots claimed to be the true one by the tenant, to the distance of a foot.

The judge refused to instruct the jury, as requested by the demandant, that the subsequent deed of Chace and the plans and measurements shown should have a controlling effect in fixing the locality of the land, if the boundaries claimed by the demandant would still leave forty-one $\frac{58}{100}$ rods of land; but instructed them as follows: "The tenant, in order to establish the fact that she does own this land, says, that when her deed, which is so indefinite in its terms, was delivered to her, it was delivered upon the land; that at the time of its delivery there were two stakes in the line of Snell Street and two stakes in the rear, and she was told that her boundary line on the east and on the west was a line running from the stake in front to the stake in the rear; that then and there Chace, who handed her the deed, told her that that was her land; and that the boundary line was the line between the stakes on each side running from the street back to Buffington. That evidence has

been put in, not for the purpose of controlling the deed, but for the purpose of trying to ascertain what the deed covered. I instruct you, as matter of law, that if with this deed the grantor, Chace, went upon the land, and there were stakes there, and he told the grantee, Mrs. Comerford, that her land was the land within those stakes, that the boundaries upon the east and upon the west were by lines running from the stakes on Snell Street to the stakes in the rear on each side, if that was the understanding of the parties, and that deed was accepted by her upon that statement in good faith, then in the absence of any fraud or mistake it locates the land, and that is her land, although the deed itself without such a conversation would be difficult of interpretation. As bearing upon that, you may take into consideration whether the grantor, Chace, afterwards by his acts showed that he considered that that was her land, where she was, or not, and to what extent it was hers."

The jury returned a verdict for the tenant; and the demandant alleged exceptions.

*J. Brown & R. C. Brown*, for the demandant.

*M. Reed*, for the tenant.

C. ALLEN, J. The matter in dispute was to determine Mrs. Comerford's east boundary line. The description in her deed was, "bounded northerly by a contemplated street called Snell Street, easterly by land of the grantor, southerly by land of Israel Buffington, and westerly by land of the said Augustus Chace, the grantor." It thus appears that her land was taken out of the middle of a large lot belonging to her grantor, with nothing in the deed to fix either her east or her west boundary line. The deed referred to no monuments by which the starting points from the street or from Buffington's land could be ascertained. Under such circumstances, if bounds or monuments existed at the date of the deed which were agreed upon orally by the parties as showing the lines of the land conveyed, or were erected or fixed by the parties for that purpose soon afterwards, that is sufficient to fix the true boundaries and lines of the land conveyed. Oral evidence must necessarily be resorted to, or the deed will fail. *Crafts* v. *Hibbard*, 4 Met. 438, 452. *Stone* v. *Clark*, 1 Met. 378. *Blaney* v. *Rice*, 20 Pick. 62, 64. *Kellogg* v. *Smith*, 7 Cush. 375, 382. *Dodd* v. *Witt*, 139 Mass. 63, 66. *Love-*

*joy* v. *Lovett*, 124 Mass. 270. *Miles* v. *Barrows*, 122 Mass. 579, 581. *Reed* v. *Proprietors of Locks & Canals*, 8 How. 274, 290.

Mrs. Comerford, at the trial, introduced testimony tending to show that, at the time of the delivery of the deed to her, Chace, her grantor, pointed out to her four stakes, one in each corner, and told her that the land between said stakes was the land he conveyed to her; and that, by an arrangement between her and Chace, the land was enclosed by fences the following season, each building one half thereof. The building of the fence was competent as a piece of evidence  The instructions to the jury were clearly expressed, and, if the facts were as contended for by Mrs. Comerford, Chace could not defeat her title by a later deed to somebody else, in which the measurement would overlap upon her land. *Blaney* v. *Rice*, 20 Pick. 62, 64.

*Exceptions overruled.*